lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MARIO VILLABONA-ALVARADO, )
)
                 Plaintiff, )
)
vs. )
) Case No. 07-3235-JAR
UNITED STATES OF AMERICA, )
et al., )
)
                 Defendants. )
)

## MEMORANDUM AND ORDER

Plaintiff brings this lawsuit against defendants alleging claims under the Privacy Act[1] and 42 U.S.C. § 1983[2] for constitutional violations under the Fifth, Eighth and Fourteenth Amendments. Plaintiff alleges that defendants caused inaccurate information relating to an allegation of violent escape to be maintained in his Inmate Central File, and that Bureau of Prisons staff failed to verify the accuracy of this information, inappropriately placed him in a high level facility and that the government failed to train or supervise its employees with respect to use of its files in making classification decisions. This matter is before the Court on defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 12). Plaintiff has not responded to defendants' motion to dismiss or for summary judgment.[3]

---

[1] 5 U.S.C. § 552a.

[2] Section 1983 is the statutory provision for civil rights actions against state actors. Accordingly, plaintiff's action is properly characterized as an action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395-97 (1971), which permits civil rights actions against federal officials.

[3] Defendants filed their motion on February 13, 2008. On August 5, 2008, the Court granted plaintiff's untimely motion for an extension of time until September 15, 2008 to file a response to defendants' motion (Doc. 16). Despite being granted this additional time, plaintiff has not filed a response.

Pursuant to D. Kan. Rule 7.4, if a respondent fails to file a timely response, "the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." For this reason, the Court finds that defendants' motion should be granted. Out of an abundance of caution, however, the Court will address the merits of the motion in granting defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).[4]

## I. Legal Standards

### *Rule 12(b)(1)*

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."[5] "A case arises under federal law if its 'well pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"[6] Plaintiff is responsible for showing the court by a preponderance of the evidence that jurisdiction is proper.[7] Mere allegations of jurisdiction are not enough.[8]

### *Rule 12(b)(6)*

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must present

---

[4]The Court recognizes that defendants' have filed a comprehensive motion to dismiss under Rule 12(b)(1), (b)(2), (b)(3), (b)(5) and (b)(6), or in the alternative, for summary judgment pursuant to Rule 56. Because the Court finds defendants' arguments under Rule 12(b)(1) and (6) to have merit, the Court assumes for purposes of this motion that it has personal jurisdiction over individual defendants and that service and venue are proper, and does not reach the alternative grounds for dismissal or summary judgment discussed in defendants' memorandum.

[5]28 U.S.C. § 1331.

[6]*Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).

[7]*United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002).

[8]*Id.* at 798.

factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[9] Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[10] The allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief.[11] "'[]Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[12]

In their motion to dismiss, defendants refer to materials outside the pleadings. It is well established that "[a] motion to dismiss for failure to state a claim upon which relief can be granted must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings."[13] In this case, the Court need not refer to documents outside the pleadings in order to resolve defendants' motion to dismiss, and the additional documents shall play no part in the Court's decision on the merits of the Rule 12(b)(6) motion.

## II.    Plaintiff's Complaint

Pro se complaints must be liberally construed, and are held to less stringent standards

---

[9] *Bell Atl. Corp v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

[10] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[11] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008).

[12] *Id*. (quoting *Twombly*, 127 S. Ct. at 1974).

[13] *Calia v. Werholtz*, 408 F. Supp. 2d 1148, 1150 (D. Kan. 2005) (citation omitted).

than formal pleadings drafted by lawyers.[14]  "[T]he court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."[15]  The Court need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[16]

Plaintiff Mario Villabona-Alvarado is a federal inmate currently designated at FCI-Atlanta, a medium security level facility.  At all times relevant to the facts giving rise to his complaint, plaintiff was designated at USP-Leavenworth, which was at the time a high security level facility.  In 1990, plaintiff was sentenced to life imprisonment, without the possibility of parole, and was designated to USP-Marion.  Plaintiff was subsequently transferred to ADX-Florence, a maximum security facility, then USP-Leavenworth.

Plaintiff's complaint names the following defendants: 1) the United States of America; 2) the Federal Bureau of Prisons (BOP); 3) E. J. Gallegos, Warden at FCI-Leavenworth during the time period giving rise to the complaint; 4) G.L. Hershberger, Regional Director, North Central Region; 5) Harrell Watts, Administrator, National Inmate Appeals; and 6) J. Johnson, Case Manager.

Plaintiff alleges that defendants relied upon information in his Inmate Central File concerning his involvement in an escape attempt while he was housed in a pretrial detention facility.[17]  Plaintiff claims he was denied transfers to lower security and custody level facilities as

---

[14]*Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).

[15]*Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).

[16]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[17]Complaint (Doc. 1 at 3-5.)

4

a result of defendants' reliance on inaccurate information.[18] Plaintiff further alleges that in accordance with a plea agreement in exchange for his withdrawal of a habeas petition, it was agreed that information relating to this escape attempt would be stricken from government records.[19] Plaintiff alleges that the United States/BOP failed to train and/or supervise its employees regarding the use of inaccurate information in his Inmate Central File and that employees of the BOP failed and refused to delete the inaccurate information from his files, which resulted in plaintiff being classified as a high security level inmate and designated to a high security level institution.

Plaintiff seeks the following relief: nominal damages in the amount of $250,000 from each of the named defendants as compensation for violating his constitutional rights; punitive damages in the amount of $250,000 from each named defendant as compensation for violating his constitutional rights; and $5000 for each day plaintiff was designated to USP-Leavenworth from October 6, 2000 until mid-2005, for violation of plaintiff's Privacy Act Rights.

### III. Discussion

#### A. Privacy Act

The Privacy Act requires that each covered agency "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."[20] An individual may access an agency's records pertaining to him and may

---

[18]*Id.* at 5-6.

[19]*Id.* at 4.

[20]5 U.S.C. § 552a(e)(5).

request amendment of those records.[21]  An individual may file a civil action against the agency if it refuses to amend its records upon request,[22] or if it

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.[23]

If the agency's actions were willful or intentional, the court may award actual damages sustained by the individual as a result of the agency's record keeping deficiencies.[24]

The director of an agency, however, may promulgate regulations to exempt any of the agency's systems of records from certain parts of the Privacy Act, if the system of records is

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . correctional, probation, pardon, or parole authorities, and which consists of . . . reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.[25]

Pursuant to this authority, the BOP has promulgated regulations to exempt its Inmate Central Records System from subsection (e)(5) of the Privacy Act.[26]  The BOP reasons and

---

[21] *Id*. § 552a(d).

[22] *Id*. § 552a(g)(1)(A).

[23] *Id*. § 552a(g)(1)(C).

[24] *Id*. § 552a(g)(4)(A).

[25] *Id*. § 552a(j)(2).  Exemptions from subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) are not permitted.  *Id*.

[26] *See id*.; 28 C.F.R. § 16.97(j), (k)(2).

<mark>justifications from subsection (e)(5) states:</mark>

> [B]ecause in the collection and maintenance of information for law
> enforcement purposes, it is impossible to determine in advance
> what information is accurate, relevant, timely and complete. Data
> which may seem unrelated irrelevant or incomplete when collected
> may take on added meaning or significance during the course of an
> investigation or within the passage of time, and could be relevant
> to future law enforcement decisions. In addition, because many of
> these records come from the courts and other state and local
> criminal justice agencies, it is administratively impossible for them
> and the Bureau to ensure compliance with this provision. The
> restrictions of subsection (e)(5) would restrict and delay trained
> correctional managers from timely exercising their judgment in
> managing the inmate population and providing for the safety and
> security of the prisons and the public.[27]

Thus, plaintiff is effectively barred from obtaining any remedy, including damages, for the BOP's alleged failure to maintain records pertaining to him with the requisite level of accuracy.[28] Similarly, to the extent plaintiff seeks any amendment of his files, BOP regulations exempt the Inmate Central Files from subsection (d) of the Privacy Act, effectively barring that claim as well.[29]

Because BOP regulations exempt the Inmate Central Records System from the accuracy, damages and amendment provisions of the Privacy Act, plaintiff fails to state a claim upon which relief can be granted, and the Court grants defendants' motion to dismiss.[30]

### B.    *Bivens* Action

---

[27] 28 C.F.R. § 16.97(k)(2).

[28] *See Brown v. United States Bureau of Prisons*, 498 F. Supp. 2d 298, 302-03 (D. D.C. 2007) (collecting cases).

[29] 5 U.S.C. § 552a(j)(2); 28 C.F.R. § 16.97(a)(4), (b)(3).

[30] As stated above, the Court does not address defendants' alternative grounds for dismissal, relating to statute of limitations, venue and personal jurisdiction issues.

<mark>7</mark>

Plaintiff alleges constitutional violations against the United States of America and the BOP.  Because plaintiff does not specify in his complaint whether he is filing suit against the individually named defendants in their individual or official capacities, the Court will assume both.

### 1.     *Official Capacity Claims*

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,[31] the Supreme Court held that plaintiffs may seek damages from federal officials in their individual capacities for violations of the Fourth Amendment.[32]  Courts since *Bivens* have characterized additional constitutional claims against federal officials as *Bivens* claims.[33]  A plaintiff may not establish liability under *Bivens* against a federal official in his *official* capacity.[34]  The Tenth Circuit has explained that "an official-capacity suit contradicts the very nature of a *Bivens* action" and that "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity."[35]  Instead, an action against a federal official in his official capacity is construed as an action against the United States.[36]

A suit for damages against the United States is barred by sovereign immunity unless such immunity has been waived.[37]  The United States has not waived sovereign immunity in *Bivens*

---

[31]403 U.S. 388 (1971).

[32]*Id.* at 395-97.

[33]*See, e.g., Carlson v. Green*, 466 U.S. 14, 18 (1980) (recognizing a *Bivens* action for Eighth Amendment violations).

[34]*Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005).

[35]*Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001).

[36]*Id.*

[37]*Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989).

actions.[38] Therefore, because plaintiff's only proper action against defendants is a *Bivens* action, his claims against the United States and the individually named defendants in their official capacities are barred by the doctrine of sovereign immunity. Similarly, the BOP, as an entity of the United States government, may only be sued in its official capacity, and plaintiff's claim against the BOP is also barred by sovereign immunity.

### 2.     *Individual Capacity Claims*

As explained above, federal officials may be individually liable under *Bivens* for constitutional violations performed under color of federal authority.[39] However, qualified immunity is a defense to a *Bivens* action.[40] The Supreme Court has explained that qualified immunity shields a government official from liability for damages incurred in the performance of discretionary functions as long as the official's conduct meets a two-part inquiry.[41] The threshold question is whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right.[42] The next sequential step is to ask whether the right was clearly established so that a reasonable official would understand what he is doing violates that right.[43]

Although qualified immunity is an affirmative defense, it may be asserted in a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "as long as the defense is based on facts appearing on the

---

[38]*Elrod v. Swanson*, 478 F. Supp. 2d 1252, 1270 (D. Kan. 2007) (citations omitted).

[39]*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 391 (1971).

[40]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[41]*Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[42]*Id*.

[43]*Id*. at 201-02 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

face of the complaint."[44]  Under the threshold inquiry of a qualified immunity analysis, the Court first must determine whether, taking plaintiff's allegations as true, defendants violated plaintiff's constitutional rights.[45] The core of plaintiff's allegations is that his incarceration at a higher level facility resulted in a denial of due process, resulted in restrictions on his liberty and cruel and unusual punishment, and denied him equal protection of other similarly situated lower security inmates.

"A *Bivens* action is a blunt and powerful instrument for correcting constitutional violations and not an 'automatic entitlement' associated with every governmental infraction."[46] Defendants point out that no court has recognized a claim for constitutional violations by BOP staff for security classification based on inaccurate information from a prisoner's Inmate Central File.  Indeed, both the Supreme Court and the Tenth Circuit have held that an inmate has no liberty interest in a specific security classification or in where he will serve a federal sentence.[47] As the Tenth Circuit recently explained in a similar case where the plaintiff brought a Privacy Act claim based on his classification and placement at a higher security facility than the prisoner believed was warranted,

> [I]nsofar as these claims can be classified as constitutional claims,
> the allegedly mistaken classification and placement of [plaintiff]
> do not implicate a liberty interest created under the Constitution
> because prisoners are not entitled to any particular degree of
> liberty. . . . Nor does [plaintiff's] classification or placement
> impose any atypical or significant hardship upon him in relation to

---

[44]*Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008) (quotation omitted).

[45]*Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005) (citing *Hope v. Pelzer*, 536 U.S. 730, 736 (2002)).

[46]*Id*. (quoting *Wilkie v. Robbins*, 127 S. Ct. 2588, 2597 (2007)).

[47]*See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Levoy v. Mills*, 788 F.2d 1437, 1440 (10th Cir. 1986).

>the ordinary incidents of prison life. . . . or threaten to lengthen his term of confinement.  Rather, it [is] the type of decision best left to the discretion of prison officials.[48]

Because plaintiff's complaint does not allege any facts that establish that defendants actions with respect to plaintiff's allegedly inaccurate information violated a constitutional right, defendants are entitled to dismissal based on qualified immunity.[49]

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 12) is GRANTED with respect to all defendants.

IT IS SO ORDERED.

Dated this 22nd day of September 2008.

           S/ Julie A. Robinson
           Julie A. Robinson
           United States District Judge

---

[48] *Treadwell v. United States Bureau of Prisons*, 32 F. App'x 519, 521 (10th Cir. 2002) (citations omitted) (concluding that district court properly dismissed claim as frivolous pursuant to 28 U.S.C. § 1915A(b)).

[49] As stated above, the Court does not address defendants' alternative grounds for dismissal regarding statute of limitations, personal jurisdiction, and respondeat superior issues.